HENRY, Circuit Judge,
concurring.
I concur in both the reasoning and the outcome of the panel’s opinion. In this ease, the evidence against Mr. Le is overwhelming, the jury was given enough guidance to fairly perform its duty, and finally, we are generally constrained by AEDPA’s *1029 deferential standard of review. These three factors together dictate that we deny Mr. Le’s appeal on this issue because we cannot conclude that the Court of Criminal Appeals unreasonably applied federal law or that Mr. Le is otherwise entitled to relief. I write separately, however, to voice my concern regarding the prosecuto-rial misconduct that seems to have played a not insignificant role in this case.
Prosecutorial misconduct at trial has routinely been the issue of post-conviction litigation. While it is true that any prosecutor will have his share of trial-outcome challenges, over the last fifteen years, the Oklahoma County District Attorney’s office has been cited for actions deemed improper,[1] “egregiously improper,”[2] deceitful and impermissible in striking foul blows,[3] deplorable,[4] “perhaps inappropriate,”[5] worthy of condemnation,[6] and, in this very case, “condemned” and “certainly error.”[7] Actions by that office have been the basis for the invalidation of both sen-fences[8] and capital convictions.[9] It is hard to formulate any kind of justifiable characterization of the conduct in the present case, for the comments push hard against the boundaries of propriety.
An experienced prosecutor should know better — especially considering the frequent criticism of his tactics by both state and federal courts — and should be willing to follow the law he has sworn to uphold. The prosecution’s actions in this case suggest defiance of Oklahoma courts and disregard for Oklahoma law. Further, in cases like Mr. Le’s in which there is more than sufficient evidence to secure a conviction, such actions may require an appellate court to order a new trial or sentencing in spite of an otherwise solid case.
In our Anglo-American heritage and Western tradition, the virtue of justice is frequently depicted as a woman wielding both a broadsword representing her power *1030 and scales representing her reliance on reason. To show justice’s aversion to passion, prejudice, or preference, she is shown blind-folded. If we allow justice to strike foul blows, even at a deserving target, we cheapen a virtue by clothing it in a vice. The rules of law and the rule of law apply to the government no less than to the governed. Professional prosecutors — as well as others who have a similar commitment to fairness — do their job every day without resorting to the tactics that jeopardized this conviction. It is all too easy to see how a prosecutor, armed with strong evidence of a defendant’s guilt, might take advantage of the jury’s trust by improperly encouraging it to impose a sentence not commensurate with the defendant’s actual moral culpability. Because of the district attorney’s actions, I must add my voice to that of the Oklahoma Court of Criminal Appeals. To allow prosecutors to make the kinds of statements advanced here not only threatens the fairness of trials but jeopardizes proper convictions.[10]
I am cognizant that in many of the cited cases, the petitioner was unable to demonstrate that the prosecutorial misconduct affected the result of the trial. However, in spite of the absence of such prejudice in individual cases, at some point the repeated violation of ethical responsibility threatens the foundations of our justice system. As the late Judge Alvin B. Rubin observed in a historically important case where the prosecutor’s actions were unjust, “justice requires more than a proceeding that reaches an objectively accurate result; trial by ordeal might by sheer chance accomplish that. It requires a proceeding that by obvious fairness helps to justify itself.”[11]
Finally, I recognize that the Oklahoma County District Attorney’s Office has done much efficient work over the years. But as the cases chronicled by the Oklahoma Court of Criminal Appeals show, some prosecutors in that office over the last fifteen years, have repeatedly and seriously crossed the line in capital cases. I have voiced my concerns to warn against conduct that threatens otherwise valid convictions and to encourage more ethical behavior in the future.

. Fowler v. Ward, 200 F.3d 1302, 1314 (10th Cir.2000) ("I believe the prosecutor's comments improperly associated Mr. Fowler with Mr. Fox’s confession.") (Ebel, J., concurring), overruled on other grounds by Slack v. McDaniel, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (as recognized by Moore v. Marr, 254 F.3d 1235, 1239 (10th Cir.2001)).

. Hooks v. Oklahoma, 19 P.3d 294, 314 (Okla.Crim.App.2001) ("Prosecutors misused evidence in the first stage of the trial and engaged in egregiously improper argument which we have often condemned.”).

. Paxton v. Ward, 199 F.3d 1197, 1216, 1218 (10th Cir.1999) ("In closing argument, Mr. Macy took advantage of Mr. Paxton’s inability to present the reason for the dismissal, deceitfully telling the jury that Mr. Paxton had failed to avail himself of the opportunity to counter the state’s case and inviting the jury to draw an adverse inference from that failure. ... We thus have no doubt that Mr. Macy’s conduct crossed the line between a hard blow and a foul one ...”).

. McCarty v. Oklahoma, 765 P.2d at 1221 ("This Court will not stand idly by ’wring[ing] its hands’ expressing nothing more than 'a ritualistic verbal spanking’ and an 'attitude of helpless piety' in denouncing the deplorable conduct of prosecutors such as we have found in this case.”) (quoting Darden v. Wainwright, 477 U.S. 168, 205-06, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (Blackmun, J., dissenting)).

. Trice v. Ward, 196 F.3d 1151, 1167 (10th Cir.1999) ("some of the comments made by the prosecutor were perhaps inappropriate ...”).

. Duckett v. Oklahoma, 919 P.2d 7, 19 (Okla.Crim.App.1995) (noting comments that "have been expressly condemned by this Court as being overly prejudicial to a defendant”).

. Le I, 947 P.2d at 554-55.

. See, e.g., Paxton, 199 F.3d at 1220 (requiring a new sentencing in a capital conviction because of the district attorney’s misconduct).

. See, e.g., McCarty, 765 P.2d at 1222.

. Trial courts also must play an important role in policing overzealous prosecutors, as both state and federal trial courts generally have greater ability immediately to correct or minimize prosecutorial error and also have more leeway to impose sanctions on prosecutors than an appellate court, which generally may only undertake the severe action of overturning a conviction. See, e.g., United States v. Wilson, 149 F.3d 1298, 1303-04 (11th Cir.1998) (noting the importance of sanctioning individual prosecutors at the trial level for persistent misconduct); United States v. Beckett, 706 F.2d 519, 521-22 (5th Cir.1983) (after noting that "error frequently repeated must be corrected” and that "[n] either the blundering prosecutor nor the blundering constable should be permitted to blunder forever”, ordering the district court to hold a hearing on whether to subject a prosecutor to disciplin-aiy action). Additionally, other methods of addressing prosecutorial misconduct exist. See Bennett L. Gershman, Prosecutorial Misconduct § 14:12 (2d ed.2001) (discussing discipline by the legal profession).

. United States v. McDaniels, 379 F.Supp. 1243, 1249 (E.D.La.1974).